No. 81,761

In the Matter of RICHARD P. SENECAL, *Respondent.*
(974 P.2d 517)

Opinion filed January 22, 1999.

*Frank D. Diehl,* deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*John J. Ambrosio,* of Law Office of John J. Ambrosio, Chtd., of Topeka, argued the cause for respondent, and *Richard P. Senecal,* respondent, appeared pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the Disciplinary Administrator's office against Richard P. Senecal, of Atchison, an attorney admitted to the practice of law in Kansas.

A formal complaint was filed against respondent on August 27, 1998, alleging violations of MRPC 1.1 (1998 Kan. Ct. R. Annot. 279) (competence); 3.1 (1998 Kan. Ct. R. Annot. 350) (meritorious claims and contentions); 3.3(a) (1998 Kan. Ct. R. Annot. 354) (candor toward the tribunal); 4.1 (1998 Kan. Ct. R. Annot. 366) (truthfulness in statements to others); and 8.4(c), (d), and (g) (1998 Kan. Ct. R. Annot. 386) (misconduct).

A formal hearing was held before a panel of the Kansas Board for Discipline of Attorneys on April 14, 1998. Respondent appeared in person and by John J. Ambrosio. The Disciplinary Administrator appeared by Frank D. Diehl, Deputy Disciplinary Administrator.

The disciplinary panel found the following facts were established by clear and convincing evidence:

"1. Respondent is an attorney at law, Kansas Registration No. 05773. He was admitted to the Kansas Bar in June, 1961. His last registration address with the Clerk of the Appellate Courts of Kansas is . . . Atchison, Kansas . . . .

"2. Respondent was investigated because of a letter written by [D.V.], an aggravated sexual battery victim of Russell A. Vanwey in a case in Shawnee County, Kansas. . . . She wrote the Attorney General's Office and copied the Disciplinary Administrator because she learned that Mr. Vanwey's prison sentence for a felony unlawful weapons charge in Case No. 92 CR-91 in Atchison County, Kansas, was changed to run concurrently, rather than consecutively, with his earlier felony sentence in Shawnee County Kansas. He had been on parole for the earlier

felony conviction when he violated that parole committing the latter felony charge. By violating his parole, Mr. Vanwey was required to serve the full term of both sentences one after the other. Respondent prepared the Order Nunc Pro Tunc that changed these sentences to run concurrently, rather than consecutively.

"3. Respondent represented Mr. Vanwey in Case No. 92 CR-91 in Atchison County. The sentence resulted from a negotiated plea. . . . Respondent testified that after approximately three (3) years had elapsed in Mr. Vanwey's sentence for Case No. 92 CR-91, his mother approached Respondent about getting her son out of prison. She told Respondent that her son had filed a pro se motion for jail time credit based on time he had served in the county jail. Respondent said he told Mr. Vanwey's mother that 'there weren't many avenues' for her son's release.
. . .

"4. Respondent knew that there was no error in Mr. Vanwey's sentence. . . . Respondent knew that 120 days was the maximum time within which a court could modify a sentence. . . . Respondent knew that changing of a sentence initially entered to run consecutively with a prior sentence to run concurrently with that sentence was not a correct purpose of an Order Nunc Pro Tunc.

"5. Nonetheless, Respondent testified that he informally approached District Judge Maurice O'Keefe, the sentencing judge, about an early release and that the judge opined that Mr. Vanwey had served enough time. . . . A hearing was held before Judge Lacey on October 10, 1995 on Mr. Vanwey's *pro se* motion. . . . Respondent appeared for Mr. Vanwey. Prior to the hearing, Respondent contacted the County Attorney by phone regarding entry of appearance on behalf of Mr. Vanwey. . . . Mr. Ternent testified that during the phone conversation and during a conversation preceding the hearing on October 10, 1995, Respondent represented that Mr. Vanwey's sentences were supposed to have run concurrently. . . . The County Attorney stated on the record, in the presence of the Respondent at the October 10, 1995 hearing that Respondent had earlier represented to him that the proposed Order Nunc Pro Tunc corrected a mistake in sentencing order. . . . Therefore, the state had no objection to a change of sentence. . . . The County Attorney did not review the criminal case file, but relied on Respondent's representations to him. . . . Respondent made no attempt to correct the County Attorney's misunderstanding. Respondent filed the Motion for the Order Nunc Pro Tunc on October 19, 1995 and after delays, the motion was heard, with substitute counsel for both the state and the defense . . . , on February 12, 1996. Judge Lacey signed the proposed order that same day. . . . When the Order Nunc Pro Tunc was entered February 12, 1996, Mr. Vanwey was released from prison.

"6. During its investigation the Disciplinary Administrator's office requested an opinion from the Kansas Attorney General regarding the use of the Order Nunc Pro Tunc in the Vanwey case. The Attorney General's opinion stated that changing the sentences from consecutive to concurrent violated K.S.A. 1991 [Supp.] Section 21-4608 requiring mandatory consecutive sentencing. In addition, because K.S.A. 1991 [Supp.] 21-4603(4)(a) prohibits changes in sentencing more

than 120 days after sentencing, the Attorney General's opinion stated that the court had no jurisdiction to enter said Order Nunc Pro Tunc more than 120 days after imposition of sentence. . . .

"7. As a result of [D.V.'s] letter . . . and the Attorney General's opinion letter . . . , the County Attorney's office filed a Motion to Set Aside the Order Nunc Pro Tunc. . . . A hearing was held on August 5, 1996 . . . . Respondent opposed the Motion on the basis that it was moot because Mr. Vanwey's parole had been revoked. However, Respondent testified before the Panel that the nunc pro tunc order had efficacy for his client notwithstanding the revocation of parole. . . . When the District Court declined to reverse itself, the state appealed. Respondent defended the district court's denial of the motion. [In its] opinion in *State v. Vanwey*, 262 Kan. 524 (1997), the Kansas Supreme Court held that the lower court erroneously refused to set aside its nunc pro tunc order, that jurisdiction did not exist for the nunc pro tunc order to be issued, and that the original sentence remains in full force and effect. . . .

"8. Respondent states that he did not mislead the court, and Judge Lacey testified he was not misled. . . .

"9. Witnesses Brenda Horton and J. David Farris, supported Respondent testimony regarding mitigating factors."

From the findings of fact, the panel concluded:

"The Panel finds, by clear and convincing evidence, that Respondent has violated MRPC 4.1(a) by his failure to speak up when he knew the Order Nunc Pro Tunc was not correcting a prison sentence, but was changing it, after 120 days for amending sentences had elapsed. . . . This is an incorrect use of an Order Nunc Pro Tunc. Although, Judge Lacey was not misled by the use of the Order Nunc Pro Tunc, County Attorney Allen Ternent was misled. Mr. Ternent was not the prosecutor at the trial, and he understood that the change from consecutive sentences to concurrent sentences was to correct a mistake in Judge O'Keefe's sentencing order.

"The Panel further finds, by clear and convincing evidence that Respondent violated MRPC 3.1 because there was no legal basis for changing Mr. Vanwey's sentences from consecutive to concurrent. A nunc pro tunc order was an improper procedure to use to request the defendant's release. The request was contrary to K.S.A. 21-4608 requiring consecutive sentences, and to K.S.A. 21-4603 prohibiting changes in sentences more than 120 days after imposition. Further, Respondent continued to support the order in district court and in the appellate proceedings.

"The Panel does not find clear and convincing evidence in the record to support a finding of a violation of MRPC 1.1. Further, because Judge Lacey unequivocally stated he was not [misled] as to the factual circumstances of the sentence and knew the applicable law, the Panel does not find clear and convincing evidence of a violation of MRPC 3.3[a] or 8.4."

As to aggravating and mitigating factors, the panel report included the following:

"Mr. Diehl drew the Panel's attention to the following factors in aggravation as applicable to this case: (b) dishonest or selfish motive (g) refusal to acknowledge wrongful nature of conduct and (i) substantial experience in the practice of law.

"Mr. Ambrosio noted for the record that the following factors in mitigation apply to Respondent's situation: (a) absence of prior disciplinary record and (g) previous good character and reputation in the community including [many] letters from clients, friends and lawyers in support of the character and general reputation of the attorney."

The panel made the following recommendations:

"After reviewing the factors in mitigation and aggravation and the ABA Standards for Imposing Lawyer Sanctions, the Panel recommends that Respondent be informally admonished per ABA Standard 6.14. This transgression was a serious matter involving failure to deal forthrightly with the County Attorney which resulted in the premature and illegal release of a felon. Fortunately, the full potential harm to the public was avoided because Mr. Vanwey's parole was revoked, and thereafter the order changing his sentence was reversed. Because the complaint represents an isolated incident in Respondent's long unblemished legal career, a more severe disposition would be inappropriate."

Panel member Anne L. Baker dissented. She would find that there was clear and convincing evidence that respondent violated MRPC 8.4(d). As to the sanction, she concluded:

"I believe that the Respondent should be publicly censured in accord with ABA standards 6.13 and 6.23. The findings of fact do not satisfy ABA standard 6.14 which requires that the misconduct caused little or no actual or potential injury to a party or caused . . . little or no adverse or potentially adverse effect on the legal proceeding. Rather, the findings support the requirements of ABA standard 6.13 that the misconduct caused injury or potential injury to a party or had an adverse or potentially adverse effect on the legal proceeding. In addition, ABA standard 6.23 is also relevant. It provides for public censure when a lawyer negligently fails to comply with a court order or rule and causes injury or potential injury to another party, such as the victims of Mr. Vanwey."

This court, having considered the record, the majority report and dissent, arguments of counsel, and statement of respondent, finds the panel's findings and conclusions of law are supported by clear and convincing evidence. However, a majority of this court cannot accept the majority panel's recommended discipline and concludes the appropriate discipline is published censure. A minority of this court would accept the majority panel's recommendation of informal admonishment.

It Is THEREFORE ORDERED that Richard P. Senecal be and he is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (1998 Kan. Ct. R. Annot. 210).

It Is FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this order be published in the official Kansas Reports.

DAVIS, J., not participating.

CHRISTEL E. MARQUARDT, J., assigned.[1]

---

[1] **REPORTER'S NOTE**: Judge Marquardt, Judge of the Kansas Court of Appeals, was appointed to hear case No. 81,761 vice Justice Davis pursuant to the authority vested in the Supreme Court by K.S.A. 20-3002(c).